IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY B. JONES,  )
    Petitioner,  )    Civil Action No. 13-233 Erie
v.  )
    )    Magistrate Judge Susan Paradise Baxter
BOBBY L. MEEKS,  )
    Respondent.  )

# OPINION AND ORDER[1]

Presently before the Court is a petition for a writ of habeas corpus filed by the petitioner, federal prisoner Anthony B. Jones, pursuant to 28 U.S.C. § 2241. He contends that the Bureau of Prisons (the "Bureau" or the "BOP"), which is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, see, e.g., United States v. Wilson, 503 U.S. 329 (1992), erred in computing his sentence. For the reasons set forth below, the petition is denied.

## I.

**A.**    **Relevant Background**

On January 23, 2004, Jones was sentenced in the U.S. District Court for the Eastern District of Pennsylvania to a 184-month term of imprisonment for Armed Bank Robbery and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. §§ 2113(d) and 924(c).

Jones committed the crime underlying his conviction on August 29, 2002. On that date, he robbed a bank while carrying and brandishing a semi-automatic handgun. He escaped with over $10,000.00 in United States currency. Jones remained a fugitive until October 9, 2002, when police in Easton, Pennsylvania learned that he was in the area. When the police located him, Jones attempted to

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

run down a police officer with a van he was driving. On that same date, the Easton Police eventually apprehended him at a home in Easton and arrested him. [ECF No. 12-7 at 3-4, Declaration of Marcus Boudreaux, at ¶ 5(a)-(d)].

As a result of the above-described incident, Jones was charged in the Northampton County Court of Common Pleas at Docket No. 3796 of 2002 with Aggravated Assault (four counts); Criminal Attempt to Commit Criminal Homicide; Person Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms (four counts); Resisting Arrest; Recklessly Endangering Another Person; Criminal Trespass; and Possession of a Firearm With an Altered Manufacture Number. [ECF No. 12-7 at 5, Boudreaux Decl. at ¶ 5(e)(v), ¶ 6(d)]. This criminal case will be referred to herein as State Criminal Case #1.

Because State/local authorities arrested Jones first, he was in the "primary custody" (sometimes referred to as "primary jurisdiction") of the Commonwealth of Pennsylvania. [ECF No. 12-7 at 7, 13 Boudreaux Decl. at ¶ 6(d), ¶ 11]. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012) (per curiam); Elwell v. Fisher, 716 F.3d 477 (8th Cir. 2013). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires

and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole. George, 463 F.App'x at 138 n.4.

On October 10, 2002, while Jones was in a Northampton County prison, a bench warrant issued by the Court of Common Pleas of Northampton County in Criminal Case No. 676 of 2002 was executed in connection with State/local charges of False Reports to Law Enforcement Authorities; Drivers Required to Be Licensed; Driving While Operating Privilege Suspended/Revoked; and Careless Driving. That criminal case will be referred to herein as State Criminal Case #2. On that same date, non-federal authorities in Lehigh County lodged two bench warrants as detainers against Jones with Northampton County authorities. One of the warrants was issued in connection with a December 1999 State/local criminal charge of Former Convict Not to Own a Firearm in the Court of Common Pleas of Lehigh County in Criminal Case No. 987 of 2001. This criminal case will be referred to herein as State Criminal Case #3. The other warrant was issued in connection with an October 2000 State/local criminal charge of Fleeing or Attempting to Elude an Officer in the Court of Common Pleas of Lehigh County in Criminal Case No. 928 of 2001. This criminal case will be referred to herein as State Criminal Case #4. [ECF No. 12-7 at 7, Boudreaux Decl. at ¶ 6(e)-(g)].

On October 11, 2002, federal charges were filed against Jones in the U.S. District Court for the Eastern District of Pennsylvania in relation to the August 29, 2002, bank robbery. That same day, a federal detainer was lodged against Jones with the Northampton County Department of Corrections. [ECF No. 12-7 at 7, Boudreaux Decl. at ¶ 6(h)].

On October 15, 2002, after a preliminary hearing, the Court of Common Pleas of Northampton County set bail at $1,000,000.00 in State Criminal Case #1. Jones remained detained due to his inability to post bail. [ECF No. 12-7 at 7-8, Boudreaux Decl. at ¶ 6(i)].

On October 24, 2002, Jones was arrested by federal authorities in the Northampton County Jail facility pursuant to federal criminal charges. A U.S. Magistrate Judge issued a writ of habeas corpus ad prosequendum so that he could appear in federal court for an initial hearing. The U.S. Marshals Service took temporary custody of him pursuant to that writ on October 24, 2002, the same day it arrested him. [ECF No. 12-7 at 7-8, Boudreaux Decl. at ¶ 6(h)-(j)].

Although Jones was temporarily transferred to the physical custody of federal authorities pursuant to the writ of habeas corpus ad prosequendum, the Commonwealth of Pennsylvania maintained primary custody over him. That is because a prisoner detained pursuant to a writ of habeas corpus ad prosequendum remains in the primary custody of the sending sovereign unless and until it relinquishes jurisdiction over him. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) app. note 3(E) (2003). See also Elwell, 716 F.3d at 482 ("When the United States obtained physical custody of Elwell based upon the writ of habeas corpus ad prosequendum, the transfer of physical control over Elwell's custody from Iowa to the United States did not terminate Iowa's primary jurisdiction.") The receiving sovereign – in this case, the federal government – is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and/or sentencing him. Id.

By the end of October 2002, federal authorities had returned Jones to the Northampton County jail facility in satisfaction of the federal writ. [ECF No. 12-7 at 8, Boudreaux Decl. at ¶ 6(m)]. On October 25, 2002, Jones was sentenced by the Court of Common Pleas of Lehigh County in State Criminal Case #3 to a term of 36-120 months with credit for time served. On that same date, he was sentenced in the Court of Common Pleas of Lehigh County in State Criminal Case #4 to a concurrent term of 12-24 months' imprisonment with credit for time served. [ECF No. 12-7 at 8, Boudreaux Decl. at ¶ 6(k)-(l)].

4

On November 21, 2002, a federal indictment was filed in the U.S. District Court for the Eastern District of Pennsylvania in Jones's federal criminal case. [ECF No. 12-7 at 7, Boudreaux Decl. at ¶ 5(a)]. He was subsequently borrowed by federal authorities on two occasions pursuant to a federal writ of habeas corpus ad prosequendum, first for a federal arraignment and then for his federal criminal trial. On April 24, 2003, after a jury trial in federal court, Jones was found guilty of Armed Bank Robbery and Brandishing a Firearm During a Crime of Violence. [ECF No. 12-7 at 8, Boudreaux Decl. at ¶ 6(q)].

On November 20, 2003, the Superior Court of Pennsylvania reversed and remanded Jones's conviction in State Criminal Case #3. On December 2, 2003, the criminal charge in that case was nolle prossed. [ECF No. 12-7 at 8-9, Boudreaux Decl. at ¶ 6(r)-(t)].

On January 23, 2004, Jones was sentenced in the U.S. District Court for the Eastern District of Pennsylvania to a 184-month term of imprisonment. The court was silent as to the relationship of the federal sentence with any other sentence to which Jones was or would be subject. On February 9, 2004, Jones was returned to state authorities in satisfaction of the most recent federal writ of habeas corpus ad prosequendum. [ECF No. 12-7 at 9, Boudreaux Decl. at ¶ 6(t)-(u)].

On March 9, 2004, Jones appeared in the Court of Common Pleas of Northampton County for a criminal trial in State Criminal Case #1. The jury found him guilty of Recklessly Endangering Another Person, Resisting Arrest, Possession of Firearms with Obliterated Number, and two counts of Person Not to Possess Firearms. It acquitted him of Criminal Attempt to Commit a Homicide and of two counts of Aggravated Assault. [ECF No. 12-7 at 9, Boudreaux Decl. at ¶ 6(v)].

On March 17, 2004, the Court of Common Pleas of Northampton County nolle prossed the criminal charges issued in State Criminal Case #2 due to the fact that Jones had been convicted on other state and federal charges in which significant incarceration was ordered. (The court also nolle prossed

criminal charges in another state criminal case in which he had been charged for writing bad checks). [ECF No. 12-7 at 9, Boudreaux Decl. at ¶ 6(w)].

On April 21, 2004, Jones was sentenced in the Court of Common Pleas for Northampton County in State Criminal Case #1 to a term of 7 ½ to 21 years of imprisonment. On May 6, 2004, he was transferred from the Northampton County Jail to the Pennsylvania Department of Corrections for service of his state sentences. [ECF No. 12-7 at 9, Boudreaux Decl. at ¶ 6(x)-(y)].

On November 2, 2005, while Jones was serving his state sentence, he was borrowed by federal authorities pursuant to a federal writ of habeas corpus ad prosequendum for a re-sentencing hearing in accordance with United States v. Booker, 543 U.S. 220 (2005). On November 8, 2005, the U.S. District Court for the Eastern District of Pennsylvania resentenced Jones to a term of 184 months of imprisonment. Once again, the federal judgment and commitment order was silent as to the relationship of the federal sentence with any other sentence to which Jones was subject. On November 10, 2005, Jones was returned to state authorities in satisfaction of the federal writ of habeas corpus ad prosequendum. [ECF No. 12-7 at 9-10, Boudreaux Decl. at ¶ 6(z)-(cc)].

More than five years later, March 21, 2011, Jones was paroled from his state sentences to the exclusive custody of federal authorities. Information the BOP received from the Pennsylvania Department of Corrections establishes that Jones's aggregated state sentence commenced on October 25, 2002 (the date the Lehigh County sentences were imposed) and ran through March 21, 2011 (the date Jones was paroled to the federal detainer). Pennsylvania also awarded Jones with pre-sentence credit for October 15, 2002, through October 25, 2002. [ECF No. 12-7 at 11, Boudreaux Decl. at ¶ 6(gg)-(hh)].

Pursuant to 18 U.S.C. § 3584(a), the BOP has calculated Jones's federal sentence as consecutive to his aggregate state sentence. Pursuant to 18 U.S.C. § 3585(a), the BOP has calculated Jones's federal sentence to have commenced on the day the Commonwealth released him on parole to the federal

6

detainer (March 21, 2011). The BOP also has determined that Jones is entitled to 6 days of pre-sentence commencement credit pursuant to 18 U.S.C. § 3585(b) for the time he spent in official detention from October 9, 2002, through October 14, 2002, because the Commonwealth did not credit that time against his state sentence. Assuming that Jones receives all good conduct time available to him, the projected release date of his federal sentence is July 23, 2024. [ECF No. 12-7 at 12-17, Boudreaux Decl. at ¶¶ 8-20].

Jones challenged the BOP's calculation of his federal sentence through the BOP's administrative remedy process. The BOP denied his request for additional sentencing credit and informed him that his sentence has been calculated correctly in accordance with the relevant federal statutes and BOP policies. [Exhibits attached to the Petition, ECF No. 5-1 at 1-15]. When an inmate asks for the type of credit that Jones wanted, the BOP conducts what is referred to as a Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990) review and considers whether it should retroactively designate the state institution where the inmate had been serving his state sentence as the place where he began service of his federal sentence pursuant to its authority under 18 U.S.C. § 3621(b). When a federal court imposes a prison sentence, Congress has authorized the BOP to designate "any available penal or correctional facility that meets minimum standards of health and habitability ... whether maintained by the Federal Government or otherwise[.]" 18 U.S.C. § 3621(b). Section 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment, so long as the factors enumerated in the statute are considered. Barden, 921 F.2d at 480-84. If the BOP grants the inmate's request for additional sentencing credit, it in effect amounts to the imposition of a retroactive (or *nunc pro tunc*) concurrent federal sentence, which, in Jones's case, would result in the commencement of his federal sentence on January 23, 2004 (the date it was originally imposed). See BOP Program Statement ("PS") 5160.05, Pages 5-7. [ECF No. 12-7 at 10, Boudreaux Decl. at ¶ 6(dd)-(ee)]. In conducting Barden review in Jones's case, the BOP considered

that his federal sentencing court had no objection to the concurrent running of the federal sentence with the state sentence. Nevertheless, after consideration of Jones's individual circumstances against the five factors set forth at 18 U.S.C. § 3621(b), [2] the BOP determined he was not appropriate for a retroactive designation of the state institution for service of his federal sentence. [ECF No. 12-7 at 10-11, Boudreaux Decl. at ¶ 6(ii); ECF No. 12-21 at 2, Resp's Ex. 2n, Factors Under 18 U.S.C. § 3621(b) Worksheet].

After the BOP denied his administrative remedy request, Jones, who is incarcerated within the territorial boundaries of the Western District Court of Pennsylvania, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [ECF Nos. 5 & 6]. He contends that he is entitled to additional credit against his federal sentence. Respondent filed an Answer in which he contends that the BOP has properly calculated Jones's federal sentence and that the petition should be denied [ECF No. 12], and Jones filed a Reply [ECF No. 14].

**B.**     **Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). 28 U.S.C. § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010), such as, for example, the way in which the BOP is computing his sentence. See, e.g., Barden, 921 F.2d at 478-79. Such petitions are filed in the

---

[2] Those factors are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission.

8

federal court of the judicial district where the federal prisoner is incarcerated. Thus, this Court has jurisdiction under § 2241 to consider Jones's claim that the BOP erred in computing his sentence.

## C. Discussion

The following statutes are relevant to the evaluation of the petition: 18 U.S.C. § 3584(a), which governs a federal sentencing court's authority to order that a federal sentence be served concurrently with a state sentence; 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences; and, 18 U.S.C. § 3585(b), which governs the amount of credit that an inmate may receive for time served in official detention prior to the date his federal sentence commences. The BOP policies at issue in this case are not published in any federal regulation, and thus are not subject to public notice and comment before adoption. Although they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984), they are entitled to "some deference" from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 207-08 (3d Cir. 2011) (per curiam) (citing Reno v. Koray, 515 U.S. 50, 61 (1995)), cert. denied, 132 S.Ct. 1068 (2012).

### 1. The determination of whether a federal sentence is concurrent with, or consecutive to, a state sentence

In determining whether Jones is entitled to any habeas relief, this Court must first examine whether there is any basis to disturb the BOP's computation of his federal sentence as being consecutive to his aggregate state sentence pursuant to 18 U.S.C. § 3584(a). That statute provides, in relevant part:

> [I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.… **Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently**.

(Emphasis added).

9

In applying § 3584(a), the BOP presumes that federal and state sentences are to be served consecutively unless the federal sentencing court orders that the sentences are to be served concurrently. See PS 5880.28, Chapt. 1, Pages 31-33; PS 5160.05, Pages 2-7. In this case, Jones's federal sentencing court did not order that his federal sentence was to be served concurrently with any state sentence. Thus, the BOP has determined that Jones's federal sentence is consecutive to his state sentence. There is no basis for this Court to disturb that determination. Given the express language of the statute, the BOP's policies regarding how to determine whether a federal sentence is concurrent with, or consecutive to, another sentence are certainly a permissible construction of § 3584(a).

When Jones challenged his sentence computation in the BOP's administrative review process, the BOP conducted a Barden review to determine whether he was eligible to receive a retroactive, or nunc pro tunc, concurrent designation under 18 U.S.C. § 3621. After consideration of Jones's individual circumstances against the five factors set forth at 18 U.S.C. § 3621(b), the BOP determined that it would not grant him the designation. The BOP's decision was not an abuse of its discretion. It was in accordance with the federal sentencing statutes and applicable agency policy, PS 5160.05, Pages 5-7, and there is no basis for this Court to disturb it.

### 2. Calculation of the date upon which a federal sentence commences

18 U.S.C. § 3585(a) governs the date a federal sentence commences. It provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. See, e.g., Ruggiano, 307 F.3d at 126. The BOP will not commence a sentence

earlier than the date it is imposed, even if made concurrent with a sentence already being served. PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). See, e.g., Rashid v. Quintana, 372 F.App'x 260, 262 (3d Cir. 2010) (per curiam) ("a federal sentence cannot begin to run earlier than on the date on which it is imposed.") (citing Unites States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998), which stated: "We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]" (internal quotations and brackets omitted)).

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a state sentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. As discussed above, at common law the "primary custody" doctrine developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Once again, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it

11

imposes before he serves a sentence imposed by any other jurisdiction. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority by, *e.g.*, granting bail, dismissing the charges, releasing the individual to parole or at the expiration of his sentence. See, e.g., George, 463 F.App'x at 138 n.4

The BOP has incorporated the common law primary custody doctrine into its policies, which provide:

1. If the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

2. If the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrently* with any state sentence, the BOP will return physical custody of the inmate to the state, designate the state facility as the initial place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

3. If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive to* any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12.

The third scenario is what has occurred in Jones's case. He was in the primary custody of the Commonwealth on the date his federal sentence was imposed. Because his federal sentence is consecutive to his state sentence, the BOP has calculated his federal sentence to have commenced under § 3585(a) on March 21, 2011, the date the Commonwealth released him on parole to the federal detainer. [ECF No. 12-7 at 13, 15, Boudreaux Decl. at ¶¶ 11, 16]. There is no basis for this Court to

12

disturb the BOP's determination. The policies it applied to Jones are a permissible construction of § 3585(a).

### 3. Calculation of pre-commencement credit under § 3585(b)

Section 3585(b) governs the amount of credit an inmate is entitled to receive for time served in official detention prior to the commencement of his federal sentence. It provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> **That has not been credited against another sentence.**

(Emphasis added).

The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). The BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. See, e.g., Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007).

The BOP has determined that Jones is entitled to six days of pre-commencement credit under § 3585(b). There is no basis for this Court to disturb the BOP's decision that Jones may not receive any additional sentencing credit under § 3585(b). The credit he has received accounts for the time he spent in official detention from October 9, 2002, through October 14, 2002, which the Commonwealth did not credit against state sentence. The BOP cannot give Jones any additional credit under § 3585(b) for the time he spent in official detention from October 15, 2002, through March 20, 2011 (the day before his federal sentence commenced) because all of that time was credited against his state sentence. See, e.g.,

<u>Vega</u>, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence).

## II.

For the reasons set forth above, the petition for a writ of habeas corpus is denied.[3] An appropriate Order follows.

Dated: March 4, 2015

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

---

[3] Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. <u>United States v. Cepero</u>, 224 F.3d 256, 264-65 (3d Cir. 2000) (en banc), abrogated on other grounds by <u>Gonzalez v. Thaler</u>, 132 S.Ct. 641 (2012); 28 U.S.C. § 2253(c)(1)(B).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY B. JONES, )
    Petitioner, ) Civil Action No. 13-233 Erie
  v. )
) Magistrate Judge Susan Paradise Baxter
BOBBY L. MEEKS, )
    Respondent. )

## **ORDER**

AND NOW, this 4th day of March, 2015;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED. The Clerk of Courts is directed to close this case.

                                  /s/ Susan Paradise Baxter
                                  SUSAN PARADISE BAXTER
                                  United States Magistrate Judge