IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY B. JONES, )<br>       Petitioner, )<br>     v. )<br>                       )<br>BOBBY L. MEEKS, )<br>       Respondent. ) | Civil Action No. 13-233 Erie<br><br>Magistrate Judge Susan Paradise Baxter |

## **OPINION**[1]

On March 4, 2015, this Court issued an Opinion and Order [ECF No. 15] denying federal prisoner Anthony B. Jones's petition for a writ of habeas corpus. In the petition, Jones challenged the way in which the Bureau of Prisons (the "Bureau" or the "BOP") has computed his federal sentence. Now before the Court is Jones's motion to reconsider [ECF No. 16],[2] which he filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, as well as his motion for an evidentiary hearing [ECF No. 21] and a motion to strike from his criminal record the date of October 24, 2002, as his federal arrest date [ECF No. 24]. For the reasons set forth below, Jones's motions are denied.[3]

### **I.**

**A.** **Relevant Background**

Jones has a lengthy criminal history and committed the crime underlying his federal sentence on August 29, 2002. On that date, he robbed a bank while carrying and brandishing a semi-automatic

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Jones filed supplements to this motion at ECF Nos. 31, 32 and 36.

[3] Jones also filed a motion to direct that he be provided with a copy of his federal trial transcript at no cost [ECF No. 33]. That motion is dismissed as moot because Jones has received a copy of his trial transcript and submitted portions of it to this Court.

1

handgun. He escaped with more than $10,000.00 in United States currency. As a result of this robbery, a federal complaint was filed on September 25, 2002, in the United States District Court for the Eastern District of Pennsylvania at Criminal Docket No. 2:02-778 and a warrant was issued for his arrest.

Jones remained a fugitive until October 9, 2002. On that date, Jones was wanted on numerous outstanding warrants, including warrants for felony bank robbery charges by both state and federal authorities and in connection with unrelated state criminal cases. [See ECF No. 12-7, Resp's Ex. 2, Declaration of Marcus Boudreaux, Management Analyst with the BOP's Designations and Sentence Computation Center, at ¶¶ 5(e), 7(e)-(g); ECF No. 28-5 at 8, Resp's Ex. 1d, Incident Report at 27 (officers informed Jones was "wanted on Northampton County bench warrants as well as warrants stemming from a bank robbery[.]"); id. at 9, Resp's Ex. 1d, Incident Report at 30 ("Anthony Jones is wanted on felony bank robbery warrants out of Northampton County[.]"); ECF No. 36-4 at 13, Jones's Att. B, Affidavit of Probable Cause, stating that on October 9, 2002, Jones "was wanted on warrants[,]" including "a warrant for an armed bank robbery.")]. Officers with the Police Department for the City of Easton, Pennsylvania, located Jones in a van and attempted to apprehend him. He escaped by running over a police officer with his vehicle. Jones fled the scene and eventually ran into a nearby home, where he had a stand-off with the police. A police officer shot him during the incident and he sustained serious injuries. After he surrendered, the Easton Police arrested him and he was immediately taken to a hospital. He had surgery and remained hospitalized for several days. When he was well enough to be released from the hospital, he was transferred to a local prison. [ECF No. 28-5, Resp's Ex. 1d, Incident Report; ECF No. 27, 7/22/15 Tr. at 13-14].

As a result of the incident that occurred on October 9, 2002, Jones was charged in the Court of Common Pleas of Northampton County at Docket No. 3796 of 2002 with Aggravated Assault (four counts); Criminal Attempt to Commit Criminal Homicide; Person Not to Possess, Use, Manufacture,

2

Control, Sell or Transfer Firearms (four counts); Resisting Arrest; Recklessly Endangering Another Person; Criminal Trespass; and Possession of a Firearm With an Altered Manufacture Number. This criminal case has been referred to in this action as State Criminal Case #1.[4] Due to Jones's surgery and hospitalization, he was not arraigned in that case until October 15, 2002. [ECF No. 12-10, Resp's Ex. 2c, Criminal Docket Sheet for proceeding before magisterial district judge].

On October 11, 2002, federal authorities lodged a federal detainer against Jones with the Northampton County Department of Corrections relating to his federal bank robbery and firearm charges. [ECF No. 12-7 at 7, Resp's Ex. 2, Boudreaux Decl. at ¶ 7(h); ECF No. 29-1 at 3, Jones's Att. 1, Northampton County Dept. of Corrections Inmate Commitment Summary Report at 9].

As the Court explained in the March 4, 2015, Opinion, state/local and federal authorities proceeded under the understanding that Jones was in the "primary custody" (sometimes referred to as "primary jurisdiction") of the Commonwealth of Pennsylvania. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Elwell v. Fisher, 716 F.3d 477 (8th Cir. 2013). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence

---

[4] The case referred to in this proceeding as State Criminal Case #2 was regarding state/local charges filed in the Court of Common Pleas of Northampton County at criminal docket No. 676 of 2002 of False Reports to Law Enforcement Authorities; Drivers Required to Be Licensed; Driving While Operating Privilege Suspended/Revoked; and Careless Driving. On March 17, 2004, the Court of Common Pleas of Northampton County nolle prossed the criminal charges issued in State Criminal Case #2 due to the fact that Jones had been convicted on other state and federal charges in which significant incarceration was ordered. (The court also nolle prossed criminal charges in another state criminal case in which he had been charged for writing bad checks). [ECF No. 12-7 at 9, Resp's Ex. 2, Boudreaux Decl. at ¶ 7(w)].

3

imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole. See, e.g., George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012) (per curiam).

At Jones's October 15, 2002, preliminary arraignment in State Criminal Case #1, his bail was set at $1,000,000.00. He remained detained due to his inability to post it. [ECF No. 12-7 at 7-8, Resp's Ex. 2, Boudreaux Decl. at ¶ 7(i)].

Jones's federal arrest date is October 24, 2002. That is the date listed in numerous documents, including his FBI Identity History Summary [ECF No. 36-7 at 2, Jones's Att. 6 ("the FBI's [Criminal Justice Information Services] Division received a fingerprint submission from the FBI, Philadelphia, Pennsylvania, stating that you were arrested on October 24, 2002, for the bank robbery charge.")], his United States Marshals Service ("USMS") Form 129 [ECF No. 12-15 at 2, Resp's Ex. 2h, Form 129 at 1], and his USMS Prisoner Tracking System Report. [ECF No. 12-17 at 2, Resp's Ex. 2j at 1 (listing that Jones was arrested by an FBI officer on 10/24/2002)]. On that date, a United States Magistrate Judge issued a writ of habeas corpus *ad prosequendum* so that Jones could appear in federal court for an initial hearing. He was arrested at the Northampton County Jail and then the USMS took temporary custody of him pursuant to that writ. [ECF No. 12-15 at 3, Resp's Ex. 2h, Form 129 at 2]. Although Jones was temporarily transferred to the physical custody of federal authorities pursuant to the writ, the state/local and the federal authorities continued to proceed under the understanding that the state maintained primary custody over him. That is because a prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the sending sovereign unless and until it relinquishes jurisdiction over him. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002),

4

superseded on other grounds by U.S.S.G. § 5G1.3(c) app. note 3(E) (2003). See also Elwell, 716 F.3d at 482 ("When the United States obtained physical custody of Elwell based upon the writ of habeas corpus *ad prosequendum*, the transfer of physical control over Elwell's custody from Iowa to the United States did not terminate Iowa's primary jurisdiction.") The receiving sovereign – in this case, the federal government – is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and/or sentencing him. Id.

After Jones's initial hearing in federal court, the USMS returned him to the Northampton County Jail in satisfaction of the writ of habeas corpus *ad prosequendum* and lodged a federal detainer with the jail. [ECF No. 12-7 at 8, Resp's Ex. 2, Boudreaux Decl. at ¶ 7(m); ECF No. 12-15 at 3, Resp's Ex. 2h, Form 129 at 2].

On October 25, 2002, Jones was sentenced by the Court of Common Pleas of Lehigh County in what has been referred to in this proceeding as State Criminal Case #3[5] to a term of 36-120 months with credit for time served. On that same date, he was sentenced in the Court of Common Pleas of Lehigh County in what has been referred to in this proceeding as State Criminal Case #4 to a concurrent term of 12-24 months' imprisonment with credit for time served.[6] [ECF No. 12-7 at 8, Boudreaux Decl. at ¶¶ 7(k)-(l)]. There is no evidence that the state court directed that Jones's state sentences were to be served concurrently with any federal sentence that Jones would have to serve.

---

[5] In State Criminal Case #3, Jones was found guilty in December 2001 in the Court of Common Pleas of Lehigh County at criminal docket No. 987 of 2001 of the charge of Former Convict Not to Own a Firearm. He failed to appear at his February 2002 sentencing hearing and a bench warrant was issued for his arrest. [ECF No. 12-7, Resp's Ex. 2, Boudreaux Decl. at ¶ 5(e)(i)]. On November 20, 2003, the Superior Court of Pennsylvania reversed and remanded Jones's conviction in State Criminal Case #3. On December 2, 2003, the criminal charge in that case was *nolle prossed*. [ECF No. 12-7 at 8-9, Resp's Ex. 2, Boudreaux Decl. at ¶¶ 7(r)-(t)]. .

[6] State Criminal Case #4 was regarding an October 2000 state/local offense of Fleeing or Attempting to Elude an Officer in the Court of Common Pleas of Lehigh County at criminal docket No. 928 of 2001. [ECF No. 12-7, Resp's Ex. 2, Boudreaux Decl. at ¶ 5(e)(ii)].

5

On November 21, 2002, a federal indictment was filed in Jones's federal criminal case. [ECF No. 12-7 at 3, Resp's Ex. 2, Boudreaux Decl. at ¶ 5(a)]. He was subsequently borrowed by the USMS on December 23, 2002, pursuant to a federal writ of habeas corpus *ad prosequendum* for a federal arraignment. The USMS returned him to the Northampton County Jail later that same day in satisfaction for the writ. On April 17, 2003, the USMS obtained temporary custody of Jones once more pursuant to another federal writ of habeas corpus *ad prosequendum* because his presence was required for his federal criminal trial. [ECF No. 12-15 at 3, Resp's Ex. 2h, Form 129 at 2]. On April 24, 2003, after his jury trial in federal court, Jones was found guilty of Armed Bank Robbery and Brandishing a Firearm During a Crime of Violence. [ECF No. 12-7 at 8, Resp's Ex. 2, Boudreaux Decl. at ¶ 7(q)]. On January 23, 2004, the federal district court sentenced Jones to a 184-month term of imprisonment. Importantly, the court did not direct that Jones was to serve his federal sentence concurrently with any state sentence that he was serving or would serve. [ECF No. 12-7 at 9-10, Resp's Ex. 2, Boudreaux Decl. at ¶¶ 7(t), 7(bb)].

On February 9, 2004, the USMS returned Jones to the Northampton County Jail in satisfaction of the most recent federal writ of habeas corpus *ad prosequendum*. [ECF No. 12-7 at 9, Resp's Ex. 2, Boudreaux Decl. at ¶ 7(u); ECF No. 12-15 at 3, Resp's Ex. 2h, Form 129 at 2]. On March 9, 2004, Jones appeared in the Court of Common Pleas of Northampton County for his criminal trial in State Criminal Case #1. The jury found him guilty of Recklessly Endangering Another Person, Resisting Arrest, Possession of Firearms with Obliterated Number, and two counts of Person Not to Possess Firearms. It acquitted him of Criminal Attempt to Commit a Homicide and of two counts of Aggravated Assault. On April 21, 2004, the state court sentenced Jones in Case #1 to a term of 7 ½ to 21 years of imprisonment. [ECF No. 12-7 at 9, Resp's Ex. 2, Boudreaux Decl. at ¶¶ 7(v), 7(x)]. There is no evidence that the state court directed that Jones's sentence was to be served concurrently with Jones's federal sentence.

On May 6, 2004, Jones was transferred from the Northampton County Jail to the Pennsylvania Department of Corrections for service of his aggregate state sentence. [ECF No. 12-7 at 9, Resp's Ex. 2, Boudreaux Decl. at ¶ 7(y)]. On November 2, 2005, while Jones was serving his state sentence, he was borrowed by federal authorities pursuant to another federal writ of habeas corpus *ad prosequendum* for a re-sentencing hearing in accordance with United States v. Booker, 543 U.S. 220 (2005). On November 8, 2005, the federal court resentenced Jones to a term of 184 months of imprisonment. Once again, the court did not direct that Jones was to serve his federal sentence concurrently with any state sentence that he was serving. On November 10, 2005, Jones was returned to state authorities in satisfaction of the federal writ of habeas corpus *ad prosequendum*. [ECF No. 12-7 at 10, Resp's Ex. 2, Boudreaux Decl. at ¶¶ 7(aa)-(cc); ECF No. 12-17, Resp's Ex. 2j, Form 129 at 2].

Jones remained at a state correctional institution serving his state sentence for the next 64 months. On March 21, 2011, the state paroled him and it released him to federal authorities pursuant to the federal detainer. Information the BOP received from the Pennsylvania Department of Corrections establishes that Jones's aggregated state sentence commenced on October 25, 2002 (the date the Lehigh County sentences were imposed) and ran through March 21, 2011 (the date Jones was paroled to the federal detainer). Pennsylvania also awarded Jones with pre-sentence credit for October 15, 2002, through October 25, 2002. [ECF No. 12-7 at 11, Resp's Ex. 2, Boudreaux Decl. at ¶ 7(gg)-(hh)].

As explained in this Court's March 4, 2015, Opinion, in accordance with 18 U.S.C. § 3584(a), the BOP has calculated Jones's federal sentence as **consecutive** to his aggregate state sentence because his federal sentencing court did not direct, when it imposed his sentence, that it was to be served concurrently with any state sentence that he was serving or would serve. Pursuant to 18 U.S.C. § 3585(a), the BOP has calculated Jones's federal sentence to have commenced on March 21, 2011, which is the date the state released him on parole to the federal detainer. The BOP also has determined

7

that Jones is entitled to six days of prior-custody credit pursuant to 18 U.S.C. § 3585(b) for the time he spent in official detention from October 9, 2002, through October 14, 2002, because the state did not credit that time against his state sentence. [ECF No. 12-7 at 12, Resp's Ex. 2, Boudreaux Decl. at ¶¶ 8-18]. Jones's federal sentence expires on July 14, 2026. At the present time, taking into consideration his current good conduct time, his projected release date is set for a date in 2024.

Jones challenged the BOP's calculation of his federal sentence through the BOP's administrative remedy process. The BOP denied his request for additional sentencing credit and informed him that his sentence has been calculated correctly in accordance with the relevant federal statutes and BOP policies. [Exhibits attached to the Petition, ECF No. 5-1 at 1-15]. When an inmate asks for the type of credit that Jones wanted, the BOP conducts what is referred to as a Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990) review and considers whether it should retroactively designate the state institution where the inmate had been serving his state sentence as the place where he began service of his federal sentence pursuant to its authority under 18 U.S.C. § 3621(b).[7] Section 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment, so long as the factors enumerated in the statute are considered.[8] Barden, 921 F.2d at 480-84. If the BOP grants the inmate's request for additional sentencing credit, it in effect amounts to the imposition of a retroactive (or *nunc pro tunc*) concurrent federal sentence, which, in Jones's case, would result in the commencement of his federal sentence on January 23, 2004 (the date it was originally imposed). See BOP Program Statement ("PS") 5160.05, Pages 5-7. [ECF No. 12-7 at 10, Resp's Ex. 2, Boudreaux Decl. at ¶¶ 7(dd)-(ee)].

---

[7] When a federal court imposes a prison sentence, Congress has authorized the BOP to designate "any available penal or correctional facility that meets minimum standards of health and habitability ... whether maintained by the Federal Government or otherwise[.]" 18 U.S.C. § 3621(b).

[8] Section 3621(b)'s five factors are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission.

In conducting the Barden review in Jones's case, the BOP considered that his federal sentencing court, in response to an inquiry from the BOP, indicated that it had no objection to the concurrent running of the federal sentence with the state sentence. Nevertheless, after consideration of Jones's individual circumstances against all of the factors set forth at 18 U.S.C. § 3621(b), including Jones's extensive criminal history, the BOP determined that he was not appropriate for a retroactive designation of the state institution for service of his federal sentence. [ECF No. 12-7 at 11-12, Resp's Ex. 2, Boudreaux Decl. at ¶ 7(ii); ECF No. 12-21 at 2, Resp's Ex. 2n, Factors Under 18 U.S.C. § 3621(b) Worksheet].

After the BOP denied Jones's administrative remedy request, he filed with this Court his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In the March 4, 2015, Opinion and Order that denied Jones's petition, the Court first explained that there was no basis for it to disturb the BOP's determination that his federal sentence is consecutive to his state sentence. The BOP's determination on this point is in accordance with 18 U.S.C. § 3584(a), which provides that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently[.]" It also is in accordance with the BOP policies that implement § 3584(a),[9] which presume that federal and state sentences are to be served consecutively unless the federal sentencing court orders that the sentences are to be served concurrently. See PS 5880.28, Chapt. 1, Pages 31-33; PS 5160.05, Pages 2-7. Moreover, the Court explained, the BOP did not abuse its discretion when it decided that Jones is not appropriate for a retroactive (or *nunc pro tunc*) designation pursuant to Barden. The

---

[9] The BOP policies discussed in this case are not published in any federal regulation, and thus are not subject to public notice and comment before adoption. Therefore, they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984). Importantly, however, they are entitled to "some deference" from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 207-08 (3d Cir. 2011) (per curiam) (citing Reno v. Koray, 515 U.S. 50, 61 (1995)).

BOP's decision in this regard is in accordance with the federal sentencing statutes and applicable agency policy. PS 5160.05, Pages 5-7.

The Court further explained that there was no basis to disturb the BOP's determination that Jones's federal sentence commenced on March 21, 2011, which is the date the state released him on parole to the federal detainer. The BOP's decision on this point is in accordance with § 3585(a), which provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a). It is also in accordance with the BOP's policies that implement § 3585(a), which instruct that if an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is consecutive to any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12. That is exactly what occurred in Jones's case.

Finally, the Court explained that the BOP correctly determined that Jones may not receive any additional sentencing credit under § 3585(b), which governs the amount of credit an inmate is entitled to receive for time served in official detention prior to the commencement of his federal sentence. The BOP cannot give Jones any additional credit under § 3585(b) for the time he spent in official detention from October 15, 2002, through March 20, 2011 (the day before his federal sentence commenced) because all of that time was credited against his state sentence. See, e.g., Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007) (the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence).

10

In Jones's motion for reconsideration, he argues that he was actually in primary federal custody beginning on October 9, 2002, since it was "not legally possible" for him to be in state custody for State Criminal Case #1 beginning on that date. [ECF No. 16 at 1]. In support of this argument, he submitted a warrant by Northampton County that was issued on October 15, 2002, for his October 9, 2002, offenses. [ECF No. 16 at 4]. After he filed his motion for reconsideration, Jones moved for an order staying this case, which the Court granted. He requested the stay because he was trying to obtain additional documents that would bolster his argument that his arrest in State Criminal Case #1 was not effectuated until October 15, 2002.

Jones subsequently filed with this Court an Order issued by the Court of Common Pleas of Northampton County on May 8, 2015, in State Criminal Case #1 that granted his request to amend his criminal history record to reflect an offense date in that case of October 9, 2002, and an arrest date of October 15, 2002. [ECF No. 19 at 4]. On July 22, 2015, the Court held a telephonic conference to address how the documents that Jones relied upon to support his motion for reconsideration impacted the BOP's calculation of his federal sentence. [ECF Nos. 25, 27]. The Respondent's counsel explained that the BOP had recently conducted a recalculation of Jones's sentence with the new documents and determined that its sentence calculation remained the same. [ECF No. 27 at 4]. At the conclusion of the conference, the Court entered an order lifting the stay in this case and directing the parties to file statements in support of their respective positions, which they subsequently filed. [ECF Nos. 28, 29]. Jones also filed a reply [ECF No. 30] to the Respondent's statement and several supplements to his motion for reconsideration. [ECF No. 31, 32, & 36].

**B.     Discussion**

The standard for obtaining relief under Rule 59(e) is difficult for a party to meet. The United States Court of Appeals for the Third Circuit has explained:

> The scope of a motion for reconsideration, we have held, is extremely limited. Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence. Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc., 602 F.3d 237, 251 (3d Cir. 2010). "Accordingly, a judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [denied the petition for writ of habeas corpus]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (quotation marks omitted) (emphasis added).

Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011).

Jones relies upon the second and third factors but he has not met his burden of demonstrating that this Court should reconsider its decision to deny his petition. As Respondent convincingly explains, the change in Jones's arrest date in State Criminal Case #1 from October 9, 2002, to October 15, 2002, does not affect this Court's authority to grant him the relief he seeks or the BOP's calculation of his federal sentence.

Jones argues that the Easton Police must have arrested him on October 9, 2002, at the behest of the federal bank robbery warrant and, therefore, since his arrest date in State Criminal Case #1 is now recorded as being October 15, 2002, the state and federal authorities were wrong when they determined that the state had primary custody over him until he was paroled to the federal detainer on March 21, 2011. Respondent acknowledges that "[i]t's not clear what state charges he was arrested for" on October 9, 2002, [ECF No. 27 at 5, 7/22/15 Tr. at 5], likely due to the fact that he was wanted on numerous warrants at the time and he was severely injured and immediately hospitalized after the

12

Easton Police took him into custody. Nevertheless, as discussed below, Jones's **federal arrest date** remains October 24, 2002.

Most importantly, however, Jones is wrong when he asserts that the key fact that this Court must determine is for which sovereign the Easton Police arrested him on October 9, 2002. The state and federal authorities settled amongst themselves the question of which sovereign had primary custody over Jones following his arrest and it not for Jones to challenge, or for this Court to decide, that issue.[10] That is because the "[d]etermination of priority of custody and service of sentence between the state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns." United States v. Warren, 610 F.2d 680, 684 (9th Cir. 1980). It is "not subject to attack by the prisoner." United States v. McCrary, 220 F.3d 868, 870 (8th Cir. 2000) (affirming the federal sentencing court's decision to deny a prisoner's motion to modify his sentence after the state and federal government determined that the state had primary custody over him; "[t]he defendant is subject to two lawful sentences of imprisonment, one by the United States and one by a state. The exercise of jurisdiction over him is solely a question to be determined between those two sovereignties[.]"); Hayward v. Looney, 246 F.2d 56, 57 (10th Cir. 1957) (federal prisoner challenging the calculation of his sentence was not entitled to writ of habeas corpus; rejecting the prisoner's argument that he was in primary federal custody, and not the primary custody of the state, on the date his federal sentence was imposed, noting: "[i]f the prisoner has violated the law of both sovereigns, he is subject to prosecution by both and he may not complain of or choose the manner or order in which each sovereign proceeds against him."); United

---

[10] As Respondent asserts, Jones's claim that he is entitled to habeas relief is based on his theory that the federal government had primary custody over him beginning on October 9, 2002, but his argument is undermined by the fact that each time the federal government required Jones's presence, it obtained him from state/local custody pursuant to a writ of habeas corpus *ad prosequendum*; it lodged a federal detainer against him with the state prison; and, it returned Jones to state custody after the federal court sentenced him so that he could continue to serve the remainder of his state sentence.

States ex rel. Moses v. Kipp, 232 F.2d 147, 150 (7th Cir. 1956) (reversing the district court's order granting the prisoner a writ of habeas corpus, explaining, *inter alia*, "[s]ince the transfer of a person from state incarceration to the federal government for the trial of a federal offense is a matter of comity between the sovereigns concerned, a prisoner may not insist upon the priority of either. A person who has violated the criminal statutes of both the federal and state government may not complain of the order in which he is tried or punished for such offenses.") (internal quotations and citations omitted).

Even if Jones could challenge the state and federal governments' determination regarding which sovereign had priority of custody over him – and he has not established that he can – the new documents that he has submitted to this Court do not establish that his federal arrest preceded his state arrest. That is, the Northampton County Court of Common Pleas has changed his arrest date in State Criminal Case #1 from October 9 to October 15, 2002, but his federal arrest date remains October 24, 2002.[11] And in any event, if Jones could establish that the federal government obtained primary custody over him on October 9, 2002, its subsequent actions establish that it relinquished its priority to the state, which exercised primary custody over him until it paroled him to the federal detainer on March 21, 2011. See, e.g., Warren, 610 F.2d at 684 ("the sovereign with priority of jurisdiction … may elect under the doctrine of comity to relinquish it to another sovereign. This discretionary election is an executive, and not a judicial, function.") (citations omitted); McCrary, 220 F.3d at 811 (same); Hayward, 246 F.2d at 58 (same).

---

[11] In August 2015, Jones filed a motion with his federal sentencing court requesting that it correct an alleged "typographical error" in his Pre-Sentence Report and change his federal arrest date from October 24, 2002, to October 9, 2002. The federal sentencing court denied his request. See docket entries 85-88 in United States v. Jones, No. 02-cr-778 (E.D. Pa.), available on PACER. In or around September 2015, Jones filed a motion with the Court of Common Pleas of Northampton County in State Criminal Case #1 to have the state court "clarify" "which sovereign" had primary custody over him. The state court denied his request. [ECF No. 31 at 2]. On November 23, 2015, the FBI sent a letter to Jones that notified him that his "request to change the date of arrest for your October 24, 2002, arrest entry to October 9, 2002" was denied because the "FBI's CJIS Division received a fingerprint submission from the FBI, Philadelphia, Pennsylvania, stating that you were arrested on October 24, 2002, for the bank robbery charge." [ECF No. 36-7 at 2, Jones's Att. 6].

It is also significant that Jones's federal sentencing court **did not** impose a sentence to be served concurrent with any state sentence. Therefore, the BOP's determination that Jones's federal sentence was not concurrent with his state sentence was in accordance with 18 U.S.C. § 3584(a)'s directive that "[m]ultiple terms of imprisonment imposed at difference times run consecutively unless the court orders that the terms are to run concurrently." Thus, it was not violative of federal law that the state and federal governments' primary custody determination resulted in Jones having to serve his aggregate state sentence before he served his federal sentence. Nor has their determination resulted in a manifestly unjust result. It also was entirely within the BOP's discretion to determine whether it would give Jones a retroactive (or *nunc pro tunc*) designation pursuant to Barden and the BOP did not abuse its discretion in declining to do so.

Finally, this Court has no authority to "strike" from his criminal records the date of October 24, 2002, as Jones's federal arrest date and his motion [ECF No. 24] requesting that relief is denied. The Court also denies his motion [ECF No. 21] for an evidentiary hearing, which Jones requested in order to prove his allegation that the BOP intentionally provided false information to this Court in the declaration that was submitted in support of the response to Jones's petition. Respondent is correct that Jones's allegations of fraud have no merit [ECF No. 28 at 9-10], and Jones now acknowledges the same [ECF No. 36 at 5-6].

## II.

For the reasons set forth above, Jones's motion for reconsideration [ECF No. 16], motion for an evidentiary hearing [ECF No. 21] and motion to strike [ECF No. 24] are denied. His motion regarding his federal trial transcript [ECF No. 33] is dismissed as moot.

An appropriate Order follows.


Dated: March 29, 2016

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge